Beady, J.
The lease of which this action is predicate is dated October 20, 1883, and the agreement to which it relates is dated October 24, 1883. The provisions in reference to the amount due and in arrear from the lessee are as follows:
It is further understood and agreed that the execution of this lease shall not in any sense change or impair the covenants contained in two leases heretofore executed between the said parties, the first thereof bearing date March 21, 1883, and the second bearing date on the twenty-seventh day of June of the same year, so far as the same relates to the payment of royalties therein provided to be paid, it being understood that the royalties in arrears and owing by the said party of the second part to the said party of the first part now amount to the sum of ten thou *71 sand, nine hundred and thirty-three dollars and twenty cents ($10,933.20) for all ores already settled for, and the undertaking on the part of the defendants which relates to those royalties is as follows :
In consideration of the sum of one dollar, to us severally paid by the Robinson Consolidated Mining Company, the receipt whereof is hereby acknowledged, we do hereby guarantee, promise and agree to and with the said company that Thomas H. Creer, who has leased the mines of the • said Robinson Consolidated Mining Company, at Robinson, Colorado, upon the terms and conditions expressed in the within lease, will well and faithfully perform and fulfill every covenant and condition expressed in said lease on the part or behalf of the said Thomas H. Creer, to be kept, performed and fulfilled in the manner and at the times as provided in said lease.
And we do hereby expressly waive and dispense with any demand upon the said Thomas H. Creer, and any notice to either of us of any non-performance on his part.
And we further agree with the Robinson Consolidated Mining Company that the execution of the above lease and this our guarantee thereto, in behalf of Thomas H. Creer, shall not be held to change or impair our liability to pay the balance of the royalties now due and owing from said Creer to said mining company under the former leases to him, as recited in the annexed lease and as previously guaranteed by us.
Upon the trial the defendant attempted to avail himself of the payment of the sum of $3,765.71 by t^.e lessee, the payment of which was alleged in the answer and denied in the reply. Whereupon the plaintiff’s counsel admitted the payment and that the lessee was not credited with the samo, but objected to the admission of a receipt for the money which was offered. It may be noted here that the fact of payment having been admitted, the receipt was wholly immaterial to the defendant’s case, and there was really no necessity for presenting it. But the defendant's counsel was not satisfied with that condition of tho subject, but proceeded to offer to show by a witness as follows :
Defendant’s counsel—I offer to prove by the witness that the agreement for the lease of October 20, 1883, was discussed and concluded upon by the witness and others, a committee of the plaintiff on the one side and Thomas H. Creer on the other, and at that time, and at the execution of said lease, Mr. Creer claimed he had made a payment for which he had not been credited, amounting to the sum stated in the receipt that was offered; that that claim’s correctness was disputed on the part- of the company; that it was then stated that Mr. Creer could at any time bring in *72 any just claim that he had for any moneys paid on account of royalties which were not then allowed.
Plaintiff’s counsel—I object to the offer as immaterial and irrelevant, not competent to vary the terms of a written agreement, and also on the ground that no such defense is interposed.
The latter statement, namely in reference to the defense, was erroneous. The defense of this payment was sufficiently interposed in the answer. The rejection of the offer, however, seems to have rested upon the proposition that it was an attempt to contradict the terms of the lease, by which it was claimed, and is now claimed upon the argument, the amount due at the time of its execution was settled. But a reference to the language will show that it was a mere understanding—the phraseology being: “It being understood that the royalties in arrear,” etc. The plaintiffs claim that according to the terms of the agreement that sum was absolutely accepted by the defendants and their promise extended to it, by the force and effect of the words: “ as recited in the annexed lease.”
But this relates to the former leases which were recited in the lease of October, 1883, and their engagement upon a proper understanding of what they undertook was to pay the royalties due and owing from Greer. So that it is questionable whether the lease actually states the amount due, and perhaps not at all doubtful that the engagement of the defendants as sureties was nothing more than to pay the amount due without .reference to the sum stated in the lease.
It is a general rule affecting the obligations of a surety that both at law and in equity he is not to be held beyond the precise terms of his contract and that except in certain cases of accident, mistake or fraud a court of equity will never lend its aid to 'fix a surety beyond what he is fairly bound to at law. Ludlow v. Simond, 2 Caines Cases, 1; Walsh v. Bailie, 10 Johns., 180; Penoyer v. Watson, 16 id., 100. And in Ward v. Stahl (81 N. Y., 406), it was held that the liability of a surety was limited to the express terms of his contract and his obligation should be construed strictly and favorably to him so far as is warranted by the terms employed. The obligation of the sureties in this case was not to pay what the lessee said was due, but to pay exactly what was due and nothing more; and that this principle should be established beyond all question as one governing the relations of a surety and creditor cannot very well be doubted. Hence we find stated in DeColyar on Guarantees (2d ed.), 182, that the debtor’s admission of liability does not dispense with proof thereof in an action against the surety brought by the creditors as the contract *73 of a surety is to be favorably construed, must be favorably construed, with all the facts and circumstances surrounding it. If he is to be held chargeable upon a statement of the amount of indebtedness by his principal it should be made with such clearness and certainty as to leave no question whatever, about its existence exactly as stated.
In this case we have the somewhat astounding revelation that the payment of a sum admitted to have been made and not credited shall, nevertheless, be rejected from the accounts of the parties. It would seem to be difficult to conceive anything much more inequitable than the enforcement of such a rule, but the doctrines of the comm 1 la founded upon technical rules of pleading present several similar improprieties.
The judgment should be reversed and a new trial ordered with costs to abide event.
Daniels and Macomber, JJ., concur.